FILED
United States Court of Appeals
Tenth Circuit

February 5, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROGELIO HERNANDEZ RODRIGUEZ,

    Defendant - Appellant.

No. 20-5017
(D.C. No. 4:19-CR-00132-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Rogelio Hernandez Rodriguez challenges the sufficiency of the evidence

supporting his convictions under 18 U.S.C. §§ 2251(a), (e) and 2252(a)(4)(B), (b)(2), for

producing and possessing sexually explicit visual depictions of a minor. He does not

challenge the sufficiency of the evidence that he possessed child pornography but

contends the prosecution failed to introduce sufficient evidence that the images were

"produced" using materials that had been transported in interstate or foreign commerce.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

We describe (A) the interstate or foreign commerce elements of §§ 2251 and 2252 that the prosecution needed to prove at trial and (B) the procedural background.

### A. *Interstate or Foreign Commerce Elements*

Under 18 U.S.C. § 2251(a), a defendant may be convicted for causing a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct "if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer."

Under 18 U.S.C. § 2252(a)(4)(B), a defendant may be convicted for "knowingly possess[ing]" a visual depiction of a minor engaging in sexually explicit conduct "which was produced using materials which have been mailed or . . . shipped or transported . . . using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce," and if "the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct."

Under both § 2251(a) and § 2252(a)(4)(B), "producing" is defined as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3).

### B. *Trial Proceedings*

A federal grand jury indicted Mr. Hernandez Rodriguez for "Sexual Exploitation of a Child" in violation of 18 U.S.C. § 2251(a), (e) and "Possession of Child Pornography" in violation of § 2252(a)(4)(B), (b)(2). ROA, Vol. 1 at 11-14. At trial, the

prosecution introduced an external hard drive and a memory card belonging to Mr. Hernandez Rodriguez. The hard drive, which was manufactured in Malaysia, contained images of child pornography. The memory card, which was manufactured in China, also contained such images.

FBI Special Agent Adam Reynolds testified about the images for the prosecution. He explained that he has "training and experience doing computer forensics and computer analysis." ROA, Vol. 2 at 86. He used the images' file names and "metadata" to explain the dates the original images were created and the date each image was transferred to Mr. Hernandez Rodriguez's hard drive or memory card. *Id.* at 102-10.[1]

Special Agent Reynolds testified that, "on electronic devices," an image's "create date" is "whe[n] it was taken," but that "if you copy to another device, you have another create date." ROA, Vol. 2 at 100. He confirmed "the create date that is on that hard drive is going to be the date that the image was moved to that storage device." *Id.*

In its closing argument, the prosecution contended the jury "heard that the hard drive and the memory chip were made in China and Malaysia. These things had to travel in foreign commerce to arrive here in the state of Oklahoma. They were not manufactured here. [The jurisdictional nexus] element is satisfied by that." *Id.* at 120.

---

[1] Special Agent Reynolds explained that "metadata" refers to "the real date and time stamp and [information about] the device that was used to take that picture." ROA, Vol. 2 at 100. He testified that this is "extra data that is buried in and hidden inside the computer file." *Id.*

At the close of the prosecution's evidence, Mr. Hernandez Rodriguez moved for a judgment of acquittal on both counts. [2] The district court denied the motion. The judge instructed the jury on the elements of the offenses, using the language of the statutes to instruct on the interstate commerce elements. ROA, Vol. 1 at 67-68. The jury convicted Mr. Hernandez Rodriguez on both counts. The district court sentenced him to 600 months in prison. Mr. Hernandez Rodriguez timely appealed.

## II. DISCUSSION

To obtain the convictions, the prosecution had to prove the interstate commerce elements of §§ 2251(a) and 2252(a)(4)(B). On appeal, Mr. Hernandez Rodriguez challenges only the sufficiency of the evidence on those elements.

In its brief, the Government states that its trial argument on the interstate commerce elements "relied solely on the origin of the production materials to meet the nexus requirement." Aplee. Br. at 10 n.1.[3] The prosecution thus needed to "demonstrate . . . that the visual depictions [at issue] were produced using materials that

---

[2] The Government does not dispute that this motion preserved the sufficiency of the evidence challenge for appeal.

[3] Despite the Government's argument on appeal, the prosecution's jurisdictional theory at trial was not limited to this argument. The prosecution also argued that Mr. Hernandez Rodriguez "had reason to know that the visual depiction would be transported or shipped in interstate or foreign commerce." ROA, Vol. 2 at 120. But because the Government asserts on appeal that it "relied solely" on the "production materials" evidence, Aplee. Br. at 10 n.1, we confine our analysis to that theory.

traveled in interstate or foreign commerce." *United States v. Wilson*, 182 F.3d 737, 741 (10th Cir. 1999).

Mr. Hernandez Rodriguez does not contest that his hard drive and memory card traveled in interstate or foreign commerce. He argues only that he did not "produce" the images when he copied and downloaded them to those devices and the prosecution therefore failed to prove the interstate or foreign commerce elements. We disagree and affirm.

## A. *Standard of Review*

"To review sufficiency of the evidence, we engage in de novo review, considering the evidence in the light most favorable to the government to determine whether any rational jury could have found guilt beyond a reasonable doubt." *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017) (quotations omitted). We review questions of statutory interpretation de novo. *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020).

## B. *Additional Legal Background*

An "image of child pornography" is "produced" when it is "copied or downloaded to [the defendant's] hard drive in one capacity or another." *United States v. Schene*, 543 F.3d 627, 639 (10th Cir. 2008) (quotations omitted). Every circuit to consider the issue has agreed that "producing" child pornography encompasses both copying and downloading. Most recently, the Sixth Circuit held that "an individual 'produce[s]' child pornography when he copies 'visual depictions' of child pornography onto a hard drive

5

that has a nexus to interstate or foreign commerce." *United States v. Lively*, 852 F.3d 549, 559 (6th Cir. 2017).[4]

Mr. Hernandez Rodriguez relies on three of our precedents in arguing that we should diverge from this consensus.

### 1. *United States v. Wilson*, **182 F.3d 737 (10th Cir. 1999)**

In *Wilson*, the defendant was convicted for possessing "ten computer diskettes[] containing visual depictions (i.e., graphics files) of minors engaging in sexually explicit conduct." 182 F.3d at 739-40. "[T]he evidence was uncontroverted that the diskettes at issue traveled in interstate commerce . . . ." *Id.* at 742. The prosecution argued at trial that because "the diskettes . . . were used to produce the visual depictions at issue (i.e., the graphics files)," *id.*, the images "were produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B)," *id.* at 740.

---

[4] *See also United States v. Burdulis*, 753 F.3d 255, 262 (1st Cir. 2014) (downloading an image onto a thumb drive satisfies § 2252(a)(4)(B) because, "[w]hen a person loads an image onto a thumb drive from the internet or another source, that person has created a new copy of the image in the digital memory of the thumb drive"); *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002) ("When the file containing the image is copied onto a disk, the original is left intact and a new copy of the image is created, so the process 'produces' an image."); *United States v. Anderson*, 280 F.3d 1121, 1125 (7th Cir. 2002) ("Computerized images are produced when computer equipment is used to copy or download the images."); *United States v. Dickson*, 632 F.3d 186, 189-90 (5th Cir. 2011) (same); *United States v. Maxwell*, 386 F.3d 1042, 1052 (11th Cir. 2004) (same), *judgment vacated on other grounds*, 546 U.S. 801 (2005).

6

We rejected this theory, not because the statutory language foreclosed it, but because the evidence was insufficient to support it. We concluded that "testimony [by the prosecution's witnesses] left unanswered the question of whether a computer graphics file is produced or created prior to being recorded on a particular storage media, or whether, instead, it only comes into being at or after the point it is recorded on the storage media." *Id.* at 743. "Although we [had] no doubt this question [had] an answer," we "conclude[d] the evidence produced by the government in this case was insufficient to allow a reasonable juror to answer the question." *Id.*

2. ***United States v. Schene*, 543 F.3d 627 (10th Cir. 2008)**

In *Schene*, we considered the "question that we held was unanswered by the evidence presented in *Wilson*." 543 F.3d at 638. "[T]he government's theory [at trial] was that [the defendant's] hard drive—which was 'mailed, or shipped or transported in interstate or foreign commerce'—had 'produced' the images of child pornography when it caused them to appear visually on [his] computer monitor." *Id.* at 636. The jury convicted the defendant, and he appealed the sufficiency of the evidence. Reviewing for plain error,[5] we found that the court erred in allowing the jury to convict based on "[t]he government's attempt to prove production of the images by their display on a computer monitor." *Id.*

---

[5] We find plain error only where there is "(1) error, (2) that was plain, (3) affecting substantial rights, and (4) going to the fairness, integrity or public reputation of the judicial proceedings." *United States v. Oldman*, 979 F.3d 1234, 1249 (10th Cir. 2020) (quotations and citation omitted).

But we held that the error did not affect the defendant's substantial rights or undermine the integrity of the proceeding because "[i]t [was] obvious that the government's evidence was sufficient, under [three] more recent Seventh and Ninth Circuit decisions, to show that each 'image of child pornography' had been copied or downloaded to [his] hard drive in one capacity or another, and was therefore 'produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce.'" *Id.* at 639 (quoting 18 U.S.C. § 2252A(a)(5)(B)).  We relied on cases in which "both the Seventh and Ninth Circuits . . . held, as a matter of law, that computerized images are 'produced' for purposes of § 2252A(a)(5)(B) when computer equipment, including both hard drives and computer diskettes, are used to copy or download the images." *Id.* at 638.[6]

3. *United States v. Sturm*, **672 F.3d 891 (10th Cir. 2012) (en banc)**

In *Sturm*, we held in an en banc decision that a defendant may be convicted under §§ 2251 and 2252 for possessing copies of illicit images if the originals traveled in interstate commerce, even if the copies did not.  The defendants in *Sturm* challenged their convictions on the ground that "each copy of an image depicting minors engaged in sexually explicit conduct is a separate and distinct visual depiction and the Government [needed to show] that the specific digital files [the defendants were] convicted of possessing and distributing traveled in interstate or foreign commerce."  672 F.3d at 897.

---

[6] 18 U.S.C. § 2252A(a)(5)(B) uses similar language on interstate or foreign commerce to §§ 2251(a) and 2252(a)(4)(B).

"The Government counter[ed] that it [could] meet its burden by proving that the substance of such digital files—the particular portrayal of a minor engaging in sexually explicit conduct—traveled in interstate or foreign commerce in some form at some point in time." *Id.*

We agreed with the government, "conclud[ing] [that] the term visual depiction means the substantive content of an image depicting a minor engaging in sexually explicit conduct rather than the specific medium or transmission used to view, store, receive, or distribute that content." *Id.* at 901. We observed that "[a] visual depiction is created once—when the child sexual abuse is captured on some type of media; it is not created anew each time that substantive content is transferred to a different storage device or transmitted over the Internet." *Id.*

C. *Analysis*

1. **Sufficiency**

The evidence was sufficient to convict Mr. Hernandez Rodriguez because the illicit images were "produced . . . using materials" that were transported "in or affecting interstate or foreign commerce." *See* 18 U.S.C. §§ 2251(a), 2252(a)(4)(B). As we observed in *Schene*, an "image of child pornography" is "produced" when it is "copied or downloaded to [the defendant's] hard drive in one capacity or another." 543 F.3d at 639 (quotations omitted).

Mr. Hernandez Rodriguez downloaded the images to his hard drive and memory card. Under *Schene*, and in accordance with every other circuit to address the question,

9

he used the hard drive and memory card to "produce" visual depictions of a minor engaging in sexually explicit activity when he downloaded the images.

Because Mr. Hernandez Rodriguez "produced" the images using the hard drive and memory card, the evidence was sufficient to convict. The prosecution introduced evidence that Mr. Hernandez Rodriguez's hard drive was manufactured in Malaysia and his memory card was manufactured in China. Those items traveled in interstate or foreign commerce to reach Mr. Hernandez Rodriguez in Oklahoma. A rational jury could therefore have concluded that the illicit images were "produced or transmitted using materials" that were transported "in or affecting interstate or foreign commerce." *See* 18 U.S.C. §§ 2251(a), 2252(a)(4)(B).

2. **Mr. Hernandez Rodriguez's Arguments**

Mr. Hernandez Rodriguez raises three counterpoints. We reject each.

First, Mr. Hernandez Rodriguez argues this court overruled *Schene* in *Sturm* and thus it is not the law that downloading an image to a storage device "produces" a visual depiction. He relies on *Sturm*'s statement that "[a] visual depiction is created once— when the child sexual abuse is captured on some type of media; it is not created anew each time that substantive content is transferred to a different storage device or transmitted over the Internet." Aplt. Br. at 14 (quoting *Sturm*, 672 F.3d at 901). He points to our conclusion that "[a]ny prior decisions of this court inconsistent with this holding are hereby overruled." *Id.* at 18 (quoting *Sturm*, 672 F.3d at 901).

10

But Mr. Hernandez Rodriguez misreads *Sturm*. *Sturm* addressed when a visual depiction is "created," not what materials are involved in "producing" an image for purposes of §§ 2251(a) and 2252(a)(4)(B). Although *Sturm* said an image is "created" when it is first captured, and not "created anew" when it is copied, *Schene* held that "producing" an image includes downloading and duplicating it. Nothing in *Sturm*'s discussion of "creation" undermined *Schene*'s discussion of "production."

This distinction between "creating" as used in *Sturm* and "producing" finds support in the statutory definition of "producing," which includes "producing, directing, manufacturing, issuing, publishing, or advertising." *See* 18 U.S.C. § 2256(3). As the First Circuit recognized, both "manufacturing" and "publishing" "encompass the creation of new copies from an original." *Burdulis*, 753 F.3d at 261-62. For example, "a publishing house is involved in the publication of a book when it prints copies of the book for sale, regardless of whether it participated in writing and editing the book or even in creating the first bound copy." *Id.* at 262. Similarly, a visual depiction that is "created" when captured by a camera is "produced" when it is duplicated and stored on a new device. We thus decline to read *Sturm* as implicitly overruling *Schene* and tacitly splitting from every other circuit to address the question before us. *Sturm* therefore does not undermine the sufficiency of the evidence in this case.

Second, Mr. Hernandez Rodriguez relies on *Wilson*, where we found the defendant's possession of diskettes containing illicit images insufficient to meet the interstate or foreign commerce element of § 2252(a)(4)(B), to argue his mere possession

11

is likewise insufficient to meet the elements here. *See* 182 F.3d at 743. But we decided *Wilson* based on insufficiency of the evidence and did not say that downloading an image to a hard drive could not constitute production as a matter of law.

In *Schene*, we agreed with those circuits finding "as a matter of law, that computerized images are 'produced' for purposes of § 2252A(a)(5)(B) when computer equipment, including both hard drives and computer diskettes, are used to copy or download the images." *Id.*[7] Unlike in *Wilson*, the prosecution here introduced testimony that an image is produced when it is copied to a hard drive or memory card. ROA, Vol. 2 at 100.[8]

Third, Mr. Hernandez Rodriguez notes that "*Schene* was addressed on plain-error review, and that standard of review was central to this Court's decision." Aplt. Br. at 16. He argues that "if de novo review had applied, the Court would have reversed under the

---

[7] Referencing *Wilson* and *Schene*, the Sixth Circuit noted in 2017 that "[e]ven the Tenth Circuit, which in the past has held that 'producing' does *not* include copying images onto a digital storage device, has retreated from that position in light of this widespread consensus." *Lively*, 852 F.3d at 560.

[8] Special Agent Reynolds testified a new image is "created" when it is copied to a hard drive. ROA, Vol. 2 at 100. Mr. Hernandez Rodriguez reads this to suggest that the government's evidence is insufficient in light of *Sturm*'s holding that "[a] visual depiction is created once—when the child sexual abuse is captured on some type of media; it is not created anew each time that substantive content is transferred to a different storage device or transmitted over the Internet." 672 F.3d at 901. But the witness's use of "created" does not control, and the context indicates that Special Agent Reynolds was using "created" to refer to the statutory term "produced." This apparent conflict between his chosen term and *Sturm*'s discussion of "creation" is semantic, not substantive.

12

controlling precedent of *Wilson*."  *Id.* at 17 n.2.  He relies on *Schene*'s language that "[t]he government's argument in the instant case mirrors the government's 'alternate theory' that we rejected in *Wilson*."  *Id.* (quoting *Schene*, 543 F.3d at 637).

Although *Schene* turned on the third and fourth prongs of the plain error analysis, Mr. Hernandez Rodriguez is incorrect that we should therefore reverse his convictions. We decided *Schene* on the final two prongs of plain error because the government did not argue at trial that downloading or copying constitutes "production."  543 F.3d at 636. Although we found the district court erred by allowing the jury to convict on the theory presented by the government, we held the error did not affect the defendant's substantial rights or the integrity of the proceeding because "[i]t [was] obvious that the government's evidence was sufficient . . . to show that each 'image of child pornography' had been copied or downloaded to [the defendant's] hard drive in one capacity or another, and was therefore 'produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce.'"  *Id.* at 639.

In resolving the appeal on that basis, we necessarily determined that copying and downloading an image is "production" under the statute, and that the government "obvious[ly]" would have prevailed under the "downloading and copying" theory. *Id.*; *see also United States v. Swenson*, 335 F. App'x 751, 754 (10th Cir. 2009) (unpublished)

13

(citing *Schene* for the proposition that "computerized images are 'produced' by a hard drive when the hard drive is used to copy or download the images.").[9]

### III. CONCLUSION

Because the evidence was sufficient, we affirm both convictions.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[9] Cited for persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").